# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                        )
JUANITA SANCHEZ, *et al.*,      )
                        )
            Plaintiffs,   )
                        )    CA No. 07-1573 (RMU)
      v.                 )
                        )
United States, *et al.*,        )
                        )
           Defendants.  )
_____)

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS FOR IMPROPER VENUE

John Arthur Eaves, Jr., (No.  432137)
EAVES LAW FIRM
101 North State Street
Jackson, MS 39201
Telephone: (601) 355-7961
Telecopier: (601) 355-0530

Of Counsel:

Steven R. Perles (No. 326975)
Edward MacAllister (No. 494558)
THE PERLES LAW FIRM, PC
1146 19th Street, NW
5th Floor
Washington, DC 20036
Telephone:  (202) 955-9055
Telefax:     (202) 955-3806

**COUNSEL FOR PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. 2

PROCEDURAL BACKGROUND AND STATEMENT OF FACTS.............................. 3

SUMMARY OF ARGUMENT ....................................................................................... 5

   **I.**   STANDARD OF REVIEW UNDER FED. R. CIV. P. 12 (b) ............................... 6

   **II.**   VENUE EXISTS IN THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. § 1402(b)................................................................................................................. 6

      A.   The Existence of Venue In Puerto Rico Does Not Preclude Venue In This District: Multiple Venues May Exist Under 28 U.S.C. § 1402(b)............................ 6

      B.   Venue In The District Of Columbia Is Supported By The Factual Allegations Of Plaintiffs' Amended Complaint.......................................................................... 10

      C.   The Choice Of The District Of Columbia As The Appropriate Venue For This Lawsuit Is Buttressed By An Assessment Of The Ramifications Of This Choice For The Efficient Conduct Of The Lawsuit .................................................................... 15

      D.   Plaintiffs' Choice-Of-Law Allegations Support A Finding Of Venue In The District Of Columbia................................................................................................ 16

   **III.**   SHOULD THE COURT FIND PLAINTIFFS' ALLEGATIONS  FOR VENUE IN THE DISTRICT OF COLUMBIA INSUFFICIENT, PLAINTIFFS ARE ENTITLED TO VENUE DISCOVERY PRIOR TO THE COURT'S DECISION WHETHER TO TRANSFER ..................................................................................... 20

   **IV.**   SHOULD THE COURT FIND THAT VENUE DOES NOT EXIST IN THE DISTRICT OF COLUMBIA, TRANSFER TO PUERTO RICO IS WARRANTED . 20

CONCLUSION............................................................................................................. 30

## PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

This is an action filed pursuant to 28 U.S.C. § 1346(b), 2671-2680, the Federal Tort Claims Act ("FTCA"), on behalf of 7,125 Americans who have been killed or injured by the negligent actions of the U.S. government. Defendant is the United States, which has waived its sovereign immunity for cases that meet the requirements of the FTCA. Prior to filing this lawsuit, Plaintiffs exhausted their administrative remedies as required by the FTCA and on March 12, 2007 received a final denial claim of letter from the Department of Navy in Washington, D.C. (Ex. 1). Plaintiffs filed their Complaint on September 5, 2007, (Docket Entry #3), prior to the expiration of the applicable six-month statute of limitations, which began to run on the date of receipt of the letter. Defendant was timely served on December 5, 2007. (Docket Entry #4). Defendant's response was therefore due on February 4, 2008.

Defendant filed its first motion to dismiss based upon venue on February 1, 2008. (Docket Entry #13). The Court granted Plaintiffs' motion to extend the time to respond to March 14, 2008. (Minute Order February 8, 2008). Plaintiffs utilized their right under Fed. Civ. P. 15 to file an amended complaint, which they filed on March 11, 2008. (Docket Entry #15).

On March 13, 2008 Defendant requested an extension of time to file a response and the Court granted the Motion. (Minute Order March 18, 2008). Defendant filed its second Fed. R. Civ. P. 12(b)(3) motion to dismiss on April 11, 2008 and Plaintiffs had until May 9, 2008 to respond. (Docket Entry #18).

In 2004, two separate groups of plaintiffs brought FTCA claims against the United States in the United States District Court for the District of Puerto Rico. <u>Abreu v.</u>

United States, 468 F.3d 20, 24 (1st Cir. 2006).  The First Circuit affirmed the district

court's dismissal of those plaintiffs' claims under the discretionary function exception.

Id.  The Abreu plaintiffs did not contest the proposition that "the discretionary function

exception generally precludes FTCA claims based on the Navy's operation of the

AFWTF."  Id. at 26.  The Sanchez Plaintiffs do not make that concession and have

brought the following claims that were not raised in Abreu and are not within the

discretionary function exception:  negligence (FAC ¶¶ 7181-7185); negligent exposure to

toxic materials (FAC ¶¶ 7186-7197); negligent maintenance of storage facilities (FAC ¶¶

7198-7206); negligent failure to monitor and failure to warn (FAC ¶¶ 7207-7211);

wrongful death (FAC ¶¶ 7212-7214); survival (FAC ¶¶ 7215-7217); negligent infliction

of emotional distress (FAC ¶¶ 7218-7221); trespass (FAC ¶¶ 7222-7225); nuisance (FAC

¶¶ 7226-7228); civil taking (FAC ¶¶ 7229-7231); and fear and fright (FAC ¶¶ 7232-

7239).

        The Sanchez Plaintiffs brought the following claims that were not raised in Abreu

and would not be controlled by the Abreu decision, that Defendant violated the following

internal guidelines, policies, regulations, and mandatory directives in regards to their

activities carried out on Vieques: Clean Water Act 33 U.S.C. § 12-51-1387[1]; 10 U.S.C. §

2705; 300 CFR § 700.832; OPNAVINST 5090.1B CH-2 § 205.1; the Navy's Master

Material License No. 40-23645-01NA, and the Naval Radioactive Material Permit No.

13-00164-L1NP.  (FAC ¶¶ 9, 13-20, 7164, 7191, 7194).

---

[1] While the plaintiffs in Abreu did allege the Navy violated the CWA, the Abreu plaintiffs' allegation was premised upon the belief that the Navy did not have a valid National Pollutant Discharge Elimination System ("NPDES") permit, which the Abreu court found to be untrue.  Abreu, 468 F.3d at 28-29.  The violations of the CWA which are made a part of this case are the result of a determination by the EPA that the Navy had committed at least 102 violations of the CWA, an issue which was not addressed in Abreu. FAC ¶ 7194.

## SUMMARY OF ARGUMENT

The 7,125 Plaintiffs filed their lawsuit against Defendant in the District of Columbia because illegal acts and omissions by U.S. government actors in the District contributed to Plaintiffs' injuries. The negligence of U.S. government actors in the District directly led to the poisoned environment that remains on the Island of Vieques where Plaintiffs live or have lived, causing their injuries. Negligence at the highest levels of the U.S. government in the District caused Plaintiffs' injuries so this lawsuit must be brought here, where the responsible government actors failed to protect the people of Vieques. Illegal acts and omissions that caused Plaintiffs' injuries occurred in Puerto Rico as well, but this can not disturb Plaintiffs' choice of forum where venue clearly exists in the District.

Should the Court find that the acts and omissions complained of create venue in Puerto Rico only, then the interests of justice dictate that the Court should transfer the case to the United States District Court for the District of Puerto Rico. Defendant's transparent insinuations regarding forum shopping should not divest Plaintiffs of their rights under the law, as they have at all times acted within these rights by both timely filing and serving their original Complaint within the statutorily prescribed limits created by Congress.

Plaintiffs are not re-litigating Abreu v. United States. Plaintiffs' claims are far more expansive than those presented by the Abreu plaintiffs, who completely failed to challenge the Defendant's failure to warn Plaintiffs of Defendant's negligence and the dangers posed by the poisoned environment. The Abreu decision is not dispositive of Plaintiffs' claims.

I.    **STANDARD OF REVIEW UNDER FED. R. CIV. P. 12 (b)**

Defendant has challenged Plaintiffs' Amended Complaint with a motion to dismiss based upon venue under Fed. R. Civ. P. 12(b)(3). Plaintiffs' allegations are taken at face value and all reasonable inferences are drawn in Plaintiffs' favor in the context of a Fed. R. Civ. P. 12(b)(3) challenge. E.g., Akers v. Gutierrex, No. 07-266, 2007 U.S. Dist. LEXIS 37250 at *2 (D.D.C. May 22, 2007) (citing Varma v. Gutierrez, 421 F. Supp. 2d 110 (D.D.C. 2006)).

II.    **VENUE EXISTS IN THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. § 1402(b)**

Plaintiffs' claims are brought pursuant to the FTCA, 28 U.S.C. § 1346(b). Venue for their FTCA claims exists in a judicial district "where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). The acts and omissions complained of in the Amended Complaint occurred in both the District of Columbia and Puerto Rico, which allows Plaintiffs to maintain their lawsuit in this Court.

A.    The Existence of Venue In Puerto Rico Does Not Preclude Venue In This District: Multiple Venues May Exist Under 28 U.S.C. § 1402(b)

Defendant's argument that venue can only exist in one courthouse under 28 U.S.C. § 1402(b) cites only one case from the United State District Court for the Southern District of Texas in support. (Mot. Dismiss at 8-9). Courts in this Circuit however apply a broad reading to the venue requirements under federal venue provisions, such as 28 U.S.C. § 1402(b), which allows venue where "the act or omission complained of occurred." Williams v. United States, 932 F. Supp. 357, 363 (D.D.C. 1996) (citing Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). A decision by the Court of

Appeals for the District of Columbia Circuit that analyzed venue under the FTCA

identified multiple, appropriate venues.  Beattie v. United States, 756 F.2d 91, 133 (D.C.

Cir. 1984).  See also Franz v. United States, 591 F. Supp. 374, 377-78 (D.D.C. 1984)

(finding venue exists in multiple jurisdiction under 28 U.S.C. § 1402(b)).  Where venue is

appropriate in multiple districts, "a strong presumption exists in favor of the plaintiff's

choice of forum."  Mathis v. Geo Group, Inc., 535 F. Supp. 2d 83, 86-87 (D.D.C. 2008)

(Urbina, J.) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)).

In this case, Plaintiffs' Amended Complaint alleges negligent decisions by U.S.

government actors that occurred in the District and a tight regulatory and legal control by

government actors in. over events that occurred on Vieques.  (FAC ¶20-26).  Plaintiffs'

choice of forum in a FTCA case should be honored if the events that transpired in the

forum are not "'insubstantial in relation to the totality of events giving rise to plaintiff's

grievance.'"  Hahn v. United States, 457 F. Supp. 2d 27, 29 (D.D.C. 2006); (quoting

Lamont, 590 F.2d at 1134 n. 62); Franz, 591 F. Supp. at 378; Williams, 932 F. Supp. at

363; Thornwell v. United States, 471 F. Supp. 344, 356 (D.D.C. 1979).  Plaintiffs' venue

allegations identify a substantial link in the chain of responsibility for Plaintiffs'

damages.

Even if the Defendant's argument that venue may only exist in one forum is correct; the

District of Columbia. nonetheless remains the appropriate forum.  Venue under the FTCA

exists where "the act or omission complained of occurred."  The Supreme Court has

analyzed the meaning of the words "the act or omission complained of occurred" from

another provision in the FTCA and interpreted the words to mean the place where the

negligence occurred, not where its operative effect occurred.  Richards v. United States,

369 U.S. 1, 9-10 (1962).  While the <u>Richards</u> Court analyzed the words "the act or omission complained of occurred" in the FTCA's choice-of-law provision, they are the same words that Congress used when it drafted the FTCA's venue provision.  28 U.S.C. § 1402(b).  The D.C. Circuit followed the <u>Richards</u> decision in <u>Hitchcock v. United States</u>, which found that the tort "occurred" in the District of Columbia where a nurse working in a U.S. government vaccination program injured the claimant at the vaccination site in Virginia.  665 F.2d 354, 359 (D.C. Cir. 1981) (<u>citing</u> <u>Richards</u>, 369 U.S. at 9-10).  The claimant sued the United States on the basis of its administration and supervision of the vaccination program and its failure to properly train and inform the nurse.  <u>Hitchcock</u>, at 359-60 (finding "[t]he locus of the negligent acts and omissions is thus established as Washington, D.C.").  In <u>Sanchez</u>, the weapons training program in Vieques was administered by U.S. government agencies located in the District, such as the Department of Navy, and such agencies are also responsible for training and supervision of personnel at Vieques, including those who disposed of and stored waste materials.

The D.C. Circuit has applied the <u>Richards</u> conclusion in its analysis of the FTCA's venue provision.  <u>Reuber v. United States</u>, 750 F.2d 1039, 1047-48 (D.C. Cir. 1984).  Decisions were made in the District to violate applicable environmental law or other applicable regulations that resulted in Plaintiffs' injuries; therefore venue is proper in the District although the decisions were implemented in Puerto Rico and separate torts were committed in Puerto Rico.

Defendant cites to several cases in support of its proposition that the "act or omission complained of" does not support venue in the District of Columbia in this case. (Mot. Dismiss at 11-12).  The venue allegations in these decisions, which do not include

any allegations of negligent conduct in the District, are inapposite to the Sanchez

Plaintiffs' venue allegations. In Hahn, a claimant seeking damages for medical

malpractice where the failure in treatment occurred solely in a Virginia hospital sought

venue in the District although his complaint did not list any failures in treatment in the

District or any related events in the District, other than a short trip to a hospital there.

457 F. Supp. 2d at 29. Defendant also cited to Simpson v. Fed. Bureau of Prisons,

although the court denied venue simply because not a single significant event occurred in

the District and the only tie to the district was the physical location of the headquarters

of an implicated agency. 496 F. Supp. 2d 187, 193 (D.D.C. 2007). In the Sanchez

Amended Complaint, Plaintiffs indentify a decision making process that produced

violations of applicable laws and regulations, which occurred in the District. (Amended

Complaint ¶20-26). As stated above, there were no venue allegations in Hahn or

Simpson that discussed tortious activity in the District.

  Defendant also cited to Zakiya v. United States where the court found there was

no venue as the action did not challenge a policy promulgated in the District of Columbia

specific to the claimant's situation, in other words a policy that directly injured him. 267

F. Supp. 2d 47, 57-59 (D.D.C. 2003). The Zakiya court identified what government

action in the District of Columbia the claimants' complaint challenged: "he has not filed

a claim challenging the decision to transfer him to the several facilities where he was

detained; what he is actually challenging is the decision to continue his detention beyond

the full term of his prison sentence." Id. at 58-59. The Zakiya court found that the "the

decision to continue his detention beyond the full term of his prison sentence" was a

national policy promulgated in the District of Columbia and claimant's challenge was "a

specific attack on the implementation of that policy to his particular situation". Id.  In

this case, Plaintiffs challenge decisions by government actors specifically about Vieques

that caused their injuries, not national policies.

    B.    Venue In The District Of Columbia Is Supported By The Factual
           Allegations Of Plaintiffs' Amended Complaint

     Plaintiffs' Amended Complaint contains numerous allegations that describe the

negligence that occurred in this forum and caused their injuries in Puerto Rico.  If

officials in Washington, D.C. play an important role in the government's conduct that

caused the injury, venue lies in Washington, D.C.

> The United States asserts that venue in this jurisdiction is improper under
> 28 U.S.C. § 1402(b), which requires that a tort action against the United
> States be prosecuted only in the judicial district in which plaintiff resides
> or wherein the act or omission complained of occurred. Kugel resides in
> Pennsylvania, and the complaint alleges FBI wrongdoing in North
> Carolina. However, Kugel's opposition to the motion to dismiss states, "It
> will be proved that instructions in this investigation were reported to
> Washington, D.C. and approved with recommendations." The government
> has not responded to this allegation of involvement by D.C.-based
> officials. Therefore, the allegation is sufficient to require denial of the
> motion to dismiss for improper venue.

Kugel v. United States, No. 89-2650, 1990 U.S. Dist. LEXIS 19405 at *2-3 (D.D.C. Apr.

25, 1990) (citing Franz v. United States, 591 F. Supp. 374 (D.D.C. 1984); Reuber v.

United States, 750 F.2d 1039 (D.C. Cir. 1984); Bartel v. FAA, 617 F. Supp. 190 (D.D.C.

1985)).  In this case, Plaintiffs have alleged the following:

- decisions in violation of environmental law or other internal regulations
  authorized or issued from the District of Columbia caused Plaintiffs' injuries;

- a long term effort to circumvent or undermine environmental laws that regulated
  military training in places such as Vieques was led from Washington, D.C.,
  including efforts by Secretary of Defense Donald Rumsfeld in 2001 and 2003;

- the negligence that caused Plaintiffs' injuries involved the actions of many different agencies in Washington D.C., including the Environmental Protection Agency, Department of Health and Human Services, the Department of the Interior, the Department of the Navy and the Department of Defense;

- these agencies would have met to resolve issues related to the Vieques weapons testing and military training program; and

- the decades of decision making that led to the choice of and continuing use of Vieques as a target range centered at the highest levels of the US military and civilian government in Washington, DC and operational decisions on Vieques emanated from decisions made in Washington, DC.

(Amended Complaint ¶20-26). These allegations point to actual decision making that occurred in Washington, D.C. which resulted in Plaintiffs' injuries. The following allegation demonstrates the involvement of the top levels of the U.S. government in decision making regarding the training and testing programs at Vieques:

- the phase-out of training on Vieques was a decision that involved the participation of the Secretary of Defense, the chief of naval operations, the Navy Secretary, the Marine Corps Commandant and undersecretary of defense for personnel and readiness, at least.

(Amended Complaint ¶27). It is reasonable to assume that the top levels of the U.S. government were involved in all of the important decisions related to the training and testing programs at Vieques. See e.g., No. 07-266, Akers v. Gutierrex, 2007 U.S. Dist. LEXIS 37250 at *2 (D.D.C. May 22, 2007) (observing that all reasonable inferences are drawn in Plaintiffs' favor in the context of a Fed. R. Civ. P. 12(b)(3) challenge). These

allegations are sufficient to allow the Court to find that venue exists for this lawsuit in this forum.

In <u>Franz v. U.S.</u>, the court found venue was proper in the District of Columbia for an FTCA claim relating to injuries caused by the administration of the witness protection program by the Department of Justice.  591 F. Supp at 378.  The defendant in <u>Franz</u> argued that the plaintiffs resided in Pennsylvania and the activities upon which the lawsuit was based occurred there.  <u>Id</u>. at 377.  The <u>Franz</u> court found venue in the District of Columbia because the DOJ and the Attorney General retained overall responsibility for the administration of the program's witness protection and maintenance policies.  <u>Id</u>. at 378.  The <u>Franz</u> court also found that a key decision was made by the DOJ in the District and that "Department was more than peripherally involved in the course of events leading up to this litigation", based upon the receipt of communications by officials at the DOJ regarding the activities in Pennsylvania, to support its decision to find venue in the District of Columbia.  <u>Id.</u> at 378-79.  In this case, not only did several agencies located in the District of Columbia directly engage in key decision making in all aspects of the Vieques weapons training programs over the decades of its existence, but it is reasonable to assume that those agencies were at the very least kept apprised of all significant decisions taken on Vieques considering the bureaucratic nature of the armed forces.

This Court has found that "[c]ourts have consistently allowed the Secretary of the Navy to be sued in the District of Columbia because he performs a significant amount of his official duties in this jurisdiction."  <u>Smith v. Dalton</u>, 927 F. Supp. 1, 6 (D.D.C. 1996) (Urbina, J.).  This Court also noted the Secretary of the Navy is the President's principle advisor, he maintains offices in the District of Columbia, and is actively involved in

congressional meetings.  Id.  All of these actions engaged in by the Secretary of the Navy

were enough to make venue proper in the District of Columbia in Smith.  Id.  While a

Secretary of the Navy is not a defendant in this case,[2] various secretaries of the Navy

have formulated policy or made decisions relevant to this case and these events give

further weight to Plaintiffs' choice of the District of Columbia as the proper venue.

Defendant argues that Plaintiffs can not establish venue through the "physical

location of a federal agency defendant."  (Mot. Dismiss at 13).  Plaintiffs have alleged

that meetings were held and decisions made pertaining to Vieques that violated

applicable laws.  (Amended Complaint ¶20-26).  The cases cited by Defendant stand for

nothing more than the proposition that venue can not be found based solely upon the

physical location of the headquarters of a relevant agency.  In Esogbue v. Dep't of

Homeland Sec., the claimant argued that venue in the District of Columbia existed on the

sole basis of the physical location of the headquarters of the Bureau of Immigration and

Customs Enforcement, without any other allegations as to the agency's relation to his

damages.  2007 U.S. Dist. LEXIS 65512 at *2-3 (D.D.C. Sept. 6, 2007).  In Bartel v.

Federal Aviation Admin. the claimant did not include a single allegation of tortious

conduct in the District or any tie to the District other than the physical location of the

headquarters of the Federal Aviation Administration.  617 F. Supp. 190, 198-99 (D.D.C.

1985).  The decision in Huskey v. Quinlan neither involved the FTCA venue provision or

a complaint that alleged that illegal decisions were made in the District.  785 F. Supp. 4,

7 (D.D.C. 1992) (finding "Plaintiff principally takes issue with the conduct of

individuals, not with the policies underlying that conduct.").  Huskey is a decision

regarding whether the case should have been transferred under 28 U.S.C. § 1404(a).  Id.

---

[2] Plaintiffs voluntarily dismissed the Secretary of the Navy from the lawsuit on May 9, 2008.

From the cases cited by Defendant, it has constructed a test for venue in the District of Columbia that states a claimant must challenge the conduct of a government officials in the District  rather than the implementation of the official's decisions or policies in order to create venue in the District, (Mot. Dismiss at 15), rules out allowing any weight in favor of venue in the District on the basis of promulgation of policy and decisions in the District and relevant to the case.  Defendant's test is explicitly contravened by several decisions from this circuit:  Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974) (finding the presence of a national policy issue in a case is a factor weighing in favor of venue in the District under 28 U.S.C. § 1404(a)); Stern v. Fed. Bureau of Prisons, 515 F. Supp. 2d 153, 156 (D.D.C. 2007) (the presence of a legal challenge to the Bureau of Prison's authority to promulgate a regulation weighs in favor of venue in the District under 28 U.S.C. § 1404(a)); Franz v. United States, 591 F. Supp. 374, 378-79 (D.D.C. 1984) (finding venue in the District based upon the DOJ's "responsibility for the administration" of the government programs that caused claimant's injuries); Kugel v. United States, No. 89-2650, 1990 U.S. Dist. LEXIS 19405 at *2-3 (D.D.C. Apr. 25, 1990) (finding venue in the District based upon the FBI's supervision of an investigation in North Carolina, where the alleged wrongdoing occurred);

The Defendant's test also ignores the possibility that federal officials may act or make decisions in the District in contravention of the law.  The language of Richards, applied to the FTCA's venue provision by Reuber, and Hitchcock however would require venue for lawsuits brought as a result of such illegal actions.  The cases cited by Defendant, (Mot. Dismiss at 10-17), do not contravene this point and do not provide robust support for Defendant's test.

The venue allegations by the claimants in the decisions cited by Defendant did not include any allegations of negligent conduct in the District.  In Hahn, 457 F. Supp. 2d at 29 (a claimant seeking damages for medical malpractice did not allege any failures in treatment in Washington, D.C.); Simpson, 496 F. Supp. 2d at 193 (court denied venue simply because not a single significant event occurred in DC); Zakiyas, 267 F. Supp. 2d at 57-59 (finding that venue in DC was not by complaint that did not allege harm was directly created by national policy promulgated in DC).  Defendant also cited Esogbue v. Dep't of Homeland Sec., Huskey v. Quinlan, and Bartel v. Federal Aviation Admin., but the claimants involved did not include a single significant allegation of tortious conduct by officials or government actors in the District, rather the claimant relied upon the mere address of the headquarters of the agency involved.  2007 U.S. Dist. LEXIS 65512 at *2-3 (D.D.C. Sept. 6, 2007); 617 F. Supp. 190, 198-99 (D.D.C. 1985); 785 F. Supp. 4, 7 (D.D.C. 1992).[3]  These decisions do not address, much less controvert, Plaintiffs' venue allegations.

C.    The Choice Of The District Of Columbia As The Appropriate Venue For This Lawsuit Is Buttressed By An Assessment Of The Ramifications Of This Choice For The Efficient Conduct Of The Lawsuit

A great deal of evidence and witnesses are located in the District of Columbia. The efficient conduct of this lawsuit is another factor that weighs in favor of leaving Plaintiffs' choice of venue undisturbed:

---

[3] Defendant also argues that the Supreme Court's decision in Sosa weighs against Plaintiffs in this case, which is not correct.  (Mot. Dismiss at 15-16).  The Court in Sosa advised that when confronted with headquarters claims the court should proceed with caution "to conclude that the act or omission at home headquarters was sufficiently close to the ultimate injury, and sufficiently important in producing it, to make it reasonably follow liability back to the headquarters behavior."  Sosa, 542 U.S. at 705.  Thus, the vitality of Beattie after Sosa is not undermined, as Defendant argues rather, post-Sosa headquarters claims are a proper basis for venue so long as the act or omission at the headquarters is sufficiently and proximately related to the ultimate injury complained about, such as in the present case.

The conclusion that venue lies in the District is also buttressed by this Court's "assessment of [the] ramifications [of these operative events] for efficient conduct of the suit." . . . . Much of the documentary evidence is located in this District, and many of the government's potential witnesses either reside or work in this area. Neither Mr. Safir nor other Marshals Service personnel will be unduly inconvenienced by a trip from McLean, Virginia, the headquarters office of the Service, to the District of Columbia. The District of Columbia is also the home of several government entities involved in the Witness Protection Program, and the location of counsel for the parties.

Franz, 591 F. Supp. at 379.   The documentation of the involvement of the EPA, Department of Health and Human Services, the Department of the Interior, the Department of the Navy and the Department of Defense, the White House and other federal agencies would be located in or around Washington, D.C., witnesses for the federal government would not be inconvenienced by a trip to the Court, and counsel for both parties is located here.   Finally, P.A. Leonard, the Deputy Judge Advocate General whose office analyzed all of Plaintiffs' administrative claims and issued the final denial letter, is located in Washington, D.C. along with the 7,125 files on Plaintiffs' claims and all the correspondence between the Judge Advocate General's office and counsel for Plaintiffs.  (Ex. 1).

D.   Plaintiffs' Choice-Of-Law Allegations Support A Finding Of Venue In The District Of Columbia

Defendants' argument that Plaintiffs have somehow conceded their venue argument by pleading Puerto Rican common and statutory law for their causes of action is fundamentally flawed, (Mot Dismiss at 9-10),[4] and overlooks the operation of the

---

[4] Defendant interprets Plaintiffs' alteration of paragraph 16 in their original complaint, which previously stated the United States would be liable "in accord with the law of Puerto Rico", to now read in their Amended Complaint that the United States would be liable "in accord with the law of the District of Columbia", Amended Complaint ¶30, as proof of Plaintiffs' intent to manufacture venue.  (Mot. Dismiss at 9).  Plaintiffs' consistency, however, is proven by reference to the operation of the FTCA's choice-of-law

16

FTCA's choice-of-law provision.   This Court is to apply the law of the place "where the act or omission occurred" pursuant to the FTCA's choice-of-law rule.  28 U.S.C. § 1346(b).  Plaintiffs have consistently and correctly maintained since the inception of this law suit that the appropriate substantive law to define Plaintiffs' causes-of-action in the present action is the law of Puerto Rico, while the proper venue for this action remains the District of Columbia.  This result is mandated by the choice-of-law provision found in 28 U.S.C. § 1346(b).

Courts interpreting the language of the choice-of-law provision found in 28 U.S.C. § 1346(b) have held a tort claim arises where the negligent act or omission occurred and not where the negligence had its operative effect.  <u>Richards v. United States</u>, 369 U.S. 1, 9-10 (1962); <u>Eaglin v. U.S. Dept. of Army</u>, 794 F.2d 981, 982 (5th Cir. 1986); <u>Beattie v. U.S.</u>, 756 F.2d 91, 96 (D.C. Cir. 1984); <u>Roberts v. U.S.</u>, 498 F.2d 520, 523 n. 2 (9th Cir. 1974).  The FTCA's choice-of-law provision "requires application of the <u>whole law of the State</u> where the act or omission occurred."  <u>Richards</u>, 369 U.S. at 11 (emphasis added).  The Supreme Court recently reiterated that the "whole law" of the state includes the application of the state's choice-of-law rules.  <u>Sosa v Alvarez-Machain</u>, 542 U.S. 692, 708 n. 5 (2004).  In this case, however, there are separate torts that occurred in the District of Columbia and Puerto Rico, with the operative effects of the District torts felt in Puerto Rico.

The <u>Richards</u> decision does not provide the complete answer for a multi-state tort action with multiple acts or omissions that occurred in two jurisdictions.  <u>Raflo v. U.S.</u>,

provision as discussed above.  Moreover, Defendant's comparison of Plaintiffs' first Complaint to Plaintiffs' Amended Complaint overlooks the Court's standard of review in its analysis of a rule 12(b)(3) motion, which focuses on the allegations of the amended complaint only and draws all favorable inferences in Plaintiffs' favor.  <u>E.g.</u>, <u>Akers v. Gutierrex</u>, No. 07-266, 2007 U.S. Dist. LEXIS 37250 at *2 (D.D.C. May 22, 2007) (<u>citing</u> <u>Varma v. Gutierrez</u>, 421 F. Supp. 2d 110 (D.D.C. 2006)).

157 F. Supp. 2d 1, 8 (D.D.C. 2001).  In that circumstance, a court must first determine whether a "true conflict" exists between the two jurisdiction's choice-of-law rules.  Id.  In Sanchez, there is a true conflict between the two jurisdictions:  the District of Columbia employs the governmental interest approach, Raflo, 157 F.Supp.2d at 5, and Puerto Rico employs the dominant or significant contacts approach.  In re San Juan Dupont Plaza Hotel Fire Litigation, 745 F. Supp. 79, 82 (D.P.R. 1990).  Where such a conflcti occurs, in multi-state tort actions under the FTCA the D.C. Circuit applies "the choice of law rules of the place where the 'relevant' act or omission occurred.'"  Raflo, 157 F. Supp. 2d at 10 (citing Hitchcock v. U.S., 665 F.2d 354, 359 (D.C. Cir. 1981)).

In Hitchcock, the plaintiff was injured by a vaccine administered by a U.S. government trained nurse in Virginia under a U.S. vaccination program, but the court applied the District of Columbia choice-of-law rules.  Id. (citing Richards, 369 U.S. at 9-10).  The court used the District's choice-of-law rules as it found the relevant acts were the negligent failure to warn of the risks of the vaccine, which was attributable to failure of government officials in the District.  Id.  Here, tortious conduct occurred in the District while the effects of the government's actions were felt in Puerto Rico, which requires the application of the District of Columbia's choice-of-law rules to determine whether its substantive law or the substantive law of the place where the effects of the tort were felt should be applied.

The District of Columbia's governmental analysis approach employs a two-step inquiry whereby the court first examines the governmental policies underlying the applicable laws and then determines which state's policies would be most advanced by having its laws applied.  Drs. Groover, Christie & Merritt, P.C. v. Burke, 917 A.2d 1110,

1117 (D.C. 2007).  As part of the analysis, the District of Columbia choice-of-law rules look to the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145 which are: "a.) the place where the injury occurred; b.) the place where the conduct causing the injury occurred; c.) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d.) the place where the relationship is centered."  Id.  The factors outlined in the Restatement seek to identify the state with the most significant relationship, which presumptively would be most benefited by having its laws applied, although when both jurisdictions have an interest in applying their laws the forum state ordinarily will apply its own law.

One need only undertake a cursory examination of the Restatement factors under the District of Columbia's choice-of-law rules to conclude that this Court should apply the substantive law of Puerto Rico to this case.  Three of the four enumerated factors point to the application of Puerto Rican law, specifically the injury occurred in Puerto Rico, the majority of Plaintiffs are domiciled in Puerto Rico, and the relationship between the Navy and the people of Vieques is primarily centered in Puerto Rico.  Only the second factor, the place where the conduct causing the injury occurred, points the conflict-of-laws analysis in the direction of applying the substantive law of the District of Columbia.  The result of the operation of the FTCA's choice-of-law provision therefore justifies Plaintiffs' good faith pleading of Puerto Rican law as the substantive law that governs their causes of action, irrespective of whether the tort occurred in the District of Puerto Rico.

III.    **SHOULD THE COURT FIND PLAINTIFFS' ALLEGATIONS FOR
        VENUE IN THE DISTRICT OF COLUMBIA INSUFFICIENT,
        PLAINTIFFS ARE ENTITLED TO VENUE DISCOVERY PRIOR TO
        THE COURT'S DECISION WHETHER TO TRANSFER**

Plaintiffs move for venue discovery should the Court find that Plaintiffs' venue

allegations insufficient.  Plaintiffs may obtain venue discovery to assure the Court that

venue does exist.  "[W]here issues arise as to jurisdiction or venue, discovery is available

to ascertain the facts bearing on such issues."  Oppenheimer Fund v. Sanders, 437 U.S.

340, 351 (1978).  Where facts are in the exclusive possession of Defendant, discovery on

jurisdiction or venue is appropriate.  Hansen v. Neumueller GmbH, 163 F.R.D. 471, 475

(D. Del. 1995) (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A.

D'Assurances, 723 F.2d 357, 361 (3d Cir. Pa. 1983); Doe v. Casey, 601 F. Supp. 581,

584 (D.D.C. 1985) (allowing venue discovery as to whether the Director of the CIA

performs a significant amount of his duties in the District of Columbia).  In this case,

Defendant is in the exclusive possession of the facts regarding the participation and

responsibility of various government officials and agencies over Vieques, chain-of-

command over the Vieques training facility and its impact on the government's negligent

destruction of the environment in Vieques and the government's negligent failure to warn

the people of Vieques as to this dangerous condition.

IV.     **SHOULD THE COURT FIND THAT VENUE DOES NOT EXIST IN
        THE DISTRICT OF COLUMBIA, TRANSFER TO PUERTO RICO IS
        WARRANTED**

For the foregoing reasons, this Court has venue over this action pursuant to 28

U.S.C. § 1402(b) as a substantial portion of the "the act[s] or omission[s] complained of",

in relation to the totality of the events alleged in the Amended Complaint, occurred in the

District of Columbia.  While the Plaintiffs concede in the present case the Defendant is also liable for negligent acts and omissions which took place solely on the island of Vieques, this does not negate the Plaintiffs' assertion that separate negligent acts and omissions of the Defendant took place solely in the District of Columbia.

Should this Court find that it lacks venue over the Plaintiffs' claims it would be in the "interest of justice" to transfer the case to the District Court of Puerto Rico rather than dismiss the case.  The Supreme Court decision in <u>Goldlwar, Inc. v. Heiman</u>, 369 U.S. 463 (1962), has generally been inferred to mean "the interest of justice requires transferring such cases [where venue is improper] to the appropriate judicial district rather than dismissing them."   <u>Mathis v. GEO Group, Inc.,</u> 535 F. Supp. 2d 83 (D.D.C. 2008) (Urbina, J.).  This comports with the Court's instructions in <u>Goldlawr</u> that "if by reasons of the uncertainties of proper venue a mistake is made . . . 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred."  <u>Goldlawr</u>, 369 U.S. at 467.

Furthermore, the procedural disposition of this case weighs heavily in favor of transferring the case and not dismissal.  While Plaintiffs timely filed their complaint before the statute of limitations expired; the applicable limitations period has since expired.  "The Supreme Court has inferred a congressional purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles" such as improper venue or an expired statute of limitations "'impede an expeditious and orderly adjudication . . . on the merits.'"  <u>Sinclair v. Kleindienst</u>, 711 F.2d 291, 294 (D.C. Cir. 1983) (<u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 466-67 (1962).  If this case is dismissed rather than transferred, the only opportunity for 7,125 American citizens to have their day in court

will be extinguished forever.  The interests of justice therefore weigh heavily in favor or transferring the case over dismissal of the case in situations where, as here, the statute of limitations would forever bar a plaintiff's claim if it is dismissed.

Defendant argues that Plaintiffs deserve to have their case dismissed rather than transferred because they filed their case one week before the statute of limitations expired.  (Mot. Dismiss at 23).  The transfer provision of 28 U.S.C. § 1406(a) is a corrective mechanism put in place to ensure that a diligent plaintiff who files his suit in the wrong venue does not have his cause dismissed and then barred by a limitations provision.  Burnett v. New York Central Railroad Co., 380 U.S. 424, 430 (1965).  The Supreme Court has instructed that a timely filing "shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure."  Goldlawr, 369 U.S. at 467.  Moreover, the relevant statute of limitations is only a mere six months long.  Thus, if Plaintiffs had filed their lawsuit the very same day the final denial letter had issued, their statute of limitations would surely have expired by the time Defendant's Motion 12(b)(3) was decided by the Court.

Defendant unfairly faults Plaintiffs for filing their lawsuit within the congressionally mandated statute of limitations and seeks to penalize them for taking a few extra months to organize 7,125 clients and produce a 500 page complaint with a 210 page appendix.  Any insinuation as to the good faith of Plaintiffs under such circumstances is unwarranted and unsupported.  Plaintiffs in the present action have spent over seven years complying with and awaiting for their claims to funnel through the Navy's administrative system before timely filing their complaint; the interests of justice will be furthered by transferring rather than dismissing this case.

Defendant also alleges Plaintiffs are forum shopping with little support for its charge. Defendant alleges "the circumstances show that Plaintiffs have purposefully filed this action in a court of improper venue in an apparent attempt to avoid extremely unfavorable precedent in the most appropriate venue, Puerto Rico." (Mot. Dismiss at 16). As support for this claim, Defendant raises Plaintiffs' choice of Puerto Rican law in their Amended Complaint and the First Circuit opinion of Abreu v. United States, 468 F.3d 20 (1st Cir. 2006). Plaintiffs pled the law of Puerto Rico in good faith believing it to be required by the FTCA's choice-of-law provision. (See Section II.C., supra). Allegations of forum shopping usually arise where a plaintiff chooses from competing state forums with inconsistent state law. Rahimi v. U.S., 474 F. Supp. 2d 825, 828 (N.D. Tex. 2006) ("Since a FTCA case must be brought in federal court, the prevention of forum shopping is not a relevant factor."). The lawsuit is brought under a federal statute and is governed by federal law and FTCA precedent whether brought in Puerto Rico or the District of Columbia.

In any event, the law that is applicable to Plaintiffs' causes of action is mandated by the choice-of-law provision of the FTCA, which result in the application of the same body of substantive law irrespective of the Plaintiffs' decision to file in Puerto Rico or Washington, D.C. See Gould Electronics, Inc. v. U.S., 223 F.3d 169, 191 (3d Cir. 2000) ("FTCA does not allow forum shopping. Rather, under the FTCA, the court must apply the "whole law" of the state where the act or omission occurred, regardless of where the suit is filed."). Irrespective of which federal forum Plaintiffs had filed their lawsuit— Puerto Rico or the District of Columbia—Puerto Rican common and statutory law would supply the substantive law to govern Plaintiffs' causes of action, as a result of the

application of the whole law of the forum.  Defendant's forum shopping argument is stripped down to the preclusive effect of the First Circuit's decision in <u>Abreu v. United States</u>.

Plaintiffs' Amended Complaint asserts many claims against Defendant that were not alleged in the <u>Abreu</u> case.[5].  Many of the Plaintiffs' claims, such as the negligent failure to warn claim, are outside discretionary function exception of the FTCA and outside of any preclusive effect of the <u>Abreu</u> decision.  Many courts have found the failure of the government to warn of a known danger to be outside the discretionary function exception.  <u>See</u> <u>generally</u> <u>Soldano v. U.S.</u>, 453 F.3d 1140 (9th Cir. 2006); <u>Oberson v. U.S. Dept. of Ag.</u>, 441 F.3d 703 (9th Cir. 2006); <u>Andrulonis v. U.S.</u>, 952 F.2d 652 (2d Cir. 1991); <u>Dube v. Pittsburgh Corning</u>, 870 F.2d 790 (1st Cir. 1989); <u>W.C. & A.N. Miller Companies v. U.S.</u>, 963 F. Supp. 1231 (D.D.C. 1997).  Likewise, courts have found claims based upon negligent maintenance to be outside the discretionary function exception.  <u>ARA Leisure Serv. v. U.S.</u>, 831 F.2d 193 (9th Cir. 1987); <u>Briggs v. Wash. Metro. Transit Auth.</u>, 293 F. Supp. 2d 8 (D.D.C. 2003).  Accordingly, the precedential effect of <u>Abreu</u>, even in Puerto Rico, would be extremely narrow and only relevant to the few allegations which were alleged by both the present Plaintiffs and the plaintiffs in <u>Abreu</u>.  Simply put it is anomalous to claim the <u>Sanchez</u> Plaintiffs are forum shopping to avoid the precedential effect of a decision which would have limited relevance to the <u>Sanchez</u> Complaint, even in Puerto Rico.

---

[5] Nevertheless, Defendant attempts to bootstrap its argument that dismissal is appropriate by clinging to the <u>Abreu</u> decision.  In doing so, Defendant is attempting to get the benefit of the discretionary function exception without proving the Plaintiffs' present claim is barred by the exception.  while Plaintiffs concede there is a RCRA claim in their complaint as in <u>Abreu</u>, the <u>Sanchez</u> Plaintiffs' claims are far more extensive then those raised in <u>Abreu</u>

While both the Sanchez Plaintiffs and the Abreu Plaintiffs bring a claim pursuant to the FTCA, the differences between the Sanchez Plaintiffs' claims and the Abreu plaintiffs' claims overshadow the few similarities between the two cases pointed out by Defendant.  Of approximately ninety-four (94) substantive paragraphs in the Plaintiffs' First Amended Complaint, Defendant clings to a similarity from a single claim: that Defendant violated RCRA by operating an open burning/open detonation facility at ATWTF without a permit.  (Mot. Dismiss at 20).  Defendant overlooks key allegations in Plaintiffs FAC which were not raised, and accordingly not ruled upon, in Abreu.

The Abreu plaintiffs did not contest the proposition that "the discretionary function exception generally precludes FTCA claims based on the Navy's operation of the AFWTF."  Abreu, 468 F.3d at 26.  The Sanchez Plaintiffs do not make that concession and have brought the following claims that were not raised in Abreu and are not within the discretionary function exception:  negligence (FAC ¶¶ 7181-7185); negligent exposure to toxic materials (FAC ¶¶ 7186-7197); negligent maintenance of storage facilities (FAC ¶¶ 7198-7206); negligent failure to monitor and failure to warn (FAC ¶¶ 7207-7211); wrongful death (FAC ¶¶ 7212-7214); survival (FAC ¶¶ 7215-7217); negligent infliction of emotional distress (FAC ¶¶ 7218-7221); trespass (FAC ¶¶ 7222-7225); nuisance (FAC ¶¶ 7226-7228); civil taking (FAC ¶¶ 7229-7231); and fear and fright (FAC ¶¶ 7232-7239).

The Sanchez Plaintiffs also brought the following claims that were not raised in Abreu and would not be controlled by the Abreu decision, that Defendant violated the following internal guidelines, policies, regulations, and mandatory directives in regards to

their activities carried out on Vieques: Clean Water Act 33 U.S.C. § 12-51-1387[6]; 10

U.S.C. § 2705; 300 CFR § 700.832; OPNAVINST 5090.1B CH-2 § 205.1; the Navy's

Master Material License No. 40-23645-01NA, and the Naval Radioactive Material Permit

No. 13-00164-L1NP.  (FAC ¶¶ 9, 13-20, 7164, 7191, 7194).  These key distinctions make

illuminate the narrowness of the preclusive effect that the Abreu decision would have on

this case in Puerto Rico.

In addition, the Plaintiffs allege in their complaint the Defendant's violation of a

number of statutes and regulations which would take the Defendant's actions out from

the protection of the FTCA's discretionary function exception.

Where venue is appropriate in multiple forums "a strong presumption exists in

favor of the plaintiffs' choice of forum."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-

56 (1981).  Plaintiffs have alleged actionable claims based on negligent acts and

omissions and failures to warn at the headquarters level, for which the District of

Columbia is an appropriate venue.  See Beattie v. U.S., 756 F.2d 91, 100 (D.C. Cir. 1984)

("it is clear that the headquarters claim satisfy the requirements of section 1402(b) by

complaining of acts or omissions within the jurisdiction of the District Court for the

District of Columbia").  Despite the justifiable grounds which exist for venue of this

action in the District of Columbia, (see Section II., supra), Defendant urges this Court to

dismiss rather than transfer this case although the law favors transfer of cases filed in

---

[6] While the plaintiffs in Abreu did allege the Navy violated the CWA, the Abreu plaintiffs' allegation was premised upon the belief that the Navy did not have a valid National Pollutant Discharge Elimination System ("NPDES") permit, which the Abreu court found to be untrue.  Abreu, 468 F.3d at 28-29.  The violations of the CWA which are made a part of this case are the result of a determination by the EPA that the Navy had committed at least 102 violations of the CWA, an issue which was not addressed in Abreu. FAC ¶ 7194.

improper venues over dismissal.  El v. Belden, 360 F.Supp.2d 90, 93 (D.D.C. 2004);

Capital Bank Int'l Ltd. v. Citigroup, Inc., 72, 78 (D.D.C. 2003).

Defendant bases its request on two decisions that were driven by fact patterns

wildly divergent from the facts of Sanchez.  Mikkilineni v. Commonwealth of

Pennsylvania, No. 02-1205, 2003 WL 21854754 (D.D.C. Aug. 5, 2003); Vanskiver v.

Rosotti, No. 00-2455, 2001 WL 361470 (D.D.C. Jan. 31, 2001).  The unique fact patterns

of those cases were a dispositive factor in favor of dismissal over transferring the case.

This Court in Mikkilineni was faced with a pro se plaintiff who had developed a

reputation in both federal and state courts for prosecuting frivolous cases.[7]  Mr.

Mikkilineni's insistence on repeatedly and abusively litigating a matter had resulted in

the issuance of an order by the Supreme Court and the Fifth Circuit that barred Mr.

Mikkilineni from filing further civil actions without further leave of court.  This Court

also entered such an order.  Mikkilineni v. Penn. Nat. Mut. Cas. Ins. Co., 271 F. Supp. 2d

142, 148 (D.D.C. 2003) (Urbina, J.).  The dismissal of Mr. Mikkilineni's case was clearly

warranted as he had routinely defied court orders and filed the same case in multiple

courts numerous times.  In the present action this is the Plaintiffs' first step into the

courtroom after waiting over seven years for the Defendant to complete the

administrative process.

---

[7] The Supreme Court found Mr. Mikkilineni had "repeatedly abused this Court's process" and directed the
Supreme Court's Clerk to no longer "accept any further petition in non-criminal matters from petitioner."
Mikkilineni v. Gallitzin Borough, 531 U.S. 804, 804 (2000). Likewise, the United States Court of Appeals
for the Fifth Circuit has instructed its clerk to no longer accept civil filings of Mr. Mikkilineni without
leave of court. Mikkilineni v. City of Houston, 203 F.3d 828 (5th Cir. 1999)., This Court explored in detail
Mr. Mikkilineni's reluctance to follow the orders of any court.  Mikkilineni v. Penn. Nat. Mut. Cas. Ins.
Co., 271 F. Supp. 2d 142 (D.D.C. 2003).  A decision based on such a fact pattern has little relevance to the
case at bar.

Defendant relies on another decision propelled by a peculiar fact pattern[8] in further support of Defendant's argument that this action should be dismissed.  The Van Skivers litigated such frivolous claims over the period of many years as whether the IRS exists and the constitutionality of the 16th Amendment to the United States Constitution. In response the United States District Court for the District Court of Kansas finally precluded the Van Skivers from filing additional actions against the United States, any agency of the United States, or its officers or employees.  U.S. v. Van Skiver, No. 89-1598-C, 1991 WL 12828, at *2 (D. Kan. Jan. 25, 1991).  In an attempt to avoid that injunction, the Van Skivers filed suit in the District of Columbia against agents of the IRS for seizing property in 1987.  The district court proceeded to dismiss the case principally on the basis of sovereign immunity, a failure to file within the applicable statute of limitations, and for failure to state a claim upon which relief can be granted.  Vanskiver v. Rosotti, No. 00-2455, 2001 WL 361470, at *2 (D.D.C. Jan. 31, 2001).[9]  Furthermore, the VanSkivers sought venue under 28 U.S.C. § 1402(a)(1), which only allows suits to be brought where the plaintiffs resides, despite the fact they lived in Kansas.  Id.  The Vanskiver court did not even discuss the factor of "interest of justice" because of the numerous other grounds in favor of dismissal and an explicitly, inapplicable venue provision, factors that are not present in the Sanchez case.  Id.  This decision does not have any application to the Sanchez case.

Plaintiffs concede that if they had abused the civil justice system, re-filed the same case in multiple venues after dismissal, and defied explicit court orders over the

---

[8] A synopsis of the Van Skiver's litigation against the United States from 1981 to 1990 may be found at U.S. v. Van Skiver, No. 89-1598-C, 1990 WL 251738 at *1-*4 (D. Kan. Dec. 13, 1990).

[9] The court only noted in passing that venue was improper in the District of Columbia and the suit was apparently filed in the District to avoid the Kansas injunction.

period of many years; dismissal might be warranted over a transfer of the case.

Defendant's inability to identify such actions on the part Plaintiffs underlines

Defendant's misplaced reliance upon cases with fact patterns such as <u>Mikkilineni</u> and

<u>Vanskiver</u>.  Defendant can not point to any evidence of forum shopping other than a

mistaken interpretation of Plaintiffs' allegations in their complaints regarding the choice-

of-law provision under the FTCA, which are ultimately consistent as Plaintiffs

demonstrated above.  (<u>See</u> Section II.D., <u>supra</u>).  The factors that typically support an

inference of forum shopping dispel Defendant's effort to argue otherwise:

> Circumstances generally indicative of forum shopping, that is, plaintiff's pursuit not simply of justice but of "justice blended with some harassment," Gulf Oil Corp. v. Gilbert, 330 U.S. at 507, include "[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum." Iragorri v. United Techs. Corp., 274 F.3d at 72; . . . .

<u>Norex Petroleum, Ltd. v. Access Indus.</u>, 416 F.3d 146, 155 (2d Cir. N.Y. 2005).

The first two factors are not applicable and the second two factors would favor

Defendant in this case.

Accordingly, Defendant's request that this Court should dismiss the Plaintiffs

case for improper venue should be denied, and should this Court find that it does not have

venue over the Plaintiffs case the Plaintiffs respectfully request this Court, in its

discretion, transfer the case to the United States District Court for Puerto Rico in the

interest of justice.

**CONCLUSION**

Plaintiffs have alleged U.S. government officials negligently created policy and made decisions in the District of Columbia that proximately caused injuries on Vieques. Further government actors in the District failed to issue any warnings to the people living there. Plaintiffs properly brought their claims in this judicial district. The Court should deny Defendant's Motion to Dismiss for Lack of Venue.

Plaintiffs respectfully request a hearing on the Motion.


May 9, 2008                    Respectfully submitted,

                               **/s/ John Arthur Eaves, Jr.**
                               John Arthur Eaves, Jr., USDC Bar # 432137
                               EAVES LAW FIRM
                               101 North State Street
                               Jackson, MS 39201
                               Telephone: (601) 355-7961
                               Telecopier: (601) 355-0530

                               Of Counsel:

                               **/s/ Steven R. Perles**
                               Steven R. Perles (No. 326975)
                               Edward MacAllister (No. 494558)
                               THE PERLES LAW FIRM, PC
                               1146 19th Street, NW
                               5th Floor
                               Washington, DC 20036
                               Telephone: (202) 955-9055
                               Telefax: (202) 955-3806

                               **ATTORNEYS FOR THE PLAINTIFFS**



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
WASHINGTON NAVY YARD
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON DC 20374-5066

IN REPLY REFER TO

5890
Ser 15.151.A1/0193
March 12, 2007

## CERTIFIED MAIL

L. Breland Hilburn, Esq.
John Arthur Eaves Law Firm
101 North State Street
Jackson, MS 39201

Dear Mr. Hilburn:

SUBJECT: CLAIMS OF VIEQUES RESIDENTS

This notice constitutes final administrative action on your clients' claims submitted for personal injuries and property damages allegedly resulting from the U.S. Navy's operation of the Atlantic Fleet Weapons Training Facility (AFWTF) on the Island of Vieques between the 1940s to the present.

Your clients' claims, whose names are listed on the enclosure to this letter, are denied. The claims were considered under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680. In accordance with the FTCA, the United States can only be held liable under limited circumstances where the negligent acts or omissions of United States employees acting within the scope of their employment proximately caused injury. The government's investigation determined that the operations of the training facility did not involve any such negligent acts or omissions, or result in any injury or property damage to the claimants.

I am required by regulation to inform you that if your clients are dissatisfied with the action taken on their claims, they may file suit in an appropriate United States District Court no later than six months from the date of mailing of this letter. By law, failure to comply with that time limit forever bars your clients from further suit. I am not implying that any such suit, if filed, would be successful.

Sincerely,

*P. A. Leonard*

P. A. LEONARD
Deputy Assistant Judge
Advocate General
(Claims and Tort Litigation)

Enclosure

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JUANITA SANCHEZ, *et al.*,              )
                                        )
                    Plaintiffs,         )
                                        )       CA No. 07-1573 (RMU)
          v.                            )
                                        )
United States, *et al.*,                )
                                        )
                    Defendants.         )
_____)

## ORDER

Upon consideration of the Defendant's Motion to Dismiss and Plaintiffs'

Opposition thereto, it is hereby this _____ day of _____, 2008

          **ORDERED** that the Motion is DENIED**.**


                              _____
                              United States District Judge